UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHERRY FOSTER, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>       v.<br><br>SKECHERS U.S.A., INC.,<br><br>               Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**ECF CASE**<br><br>**JURY TRIAL DEMANDED** |

SHERRY FOSTER (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by her attorneys, HACH ROSE SCHIRRIPA & CHEVERIE, LLP ("HRSC"), brings this Complaint against the Defendant, SKECHERS U.S.A, INC., as follows:

**PRELIMINARY STATEMENT**

1.     Manufacturers must construct and sell products that are safe to use. Further, manufacturers are expected to disclose the truth to consumers when they discover or know of a likelihood that there exists a safety issue with a product they cause to enter the stream of commerce. This is especially true and applicable when the products are marketed and intended for use by children.

2.     The instant action seeks relief on behalf of Plaintiff and similarly situated individuals, defined below (the "Class"), who purchased defective battery-operated light-up sneakers (the "Defective Sneakers") manufactured, marketed, promoted and sold by Defendant Skechers U.S.A., Inc. ("Skechers" or "Defendant") and who, as a result of Skechers' defective products, suffered damages as a result of the Defective Sneakers' defective design.[1]

---

[1] The Defective Sneakers were all part of Skechers' various lines of battery-operated light-up sneakers aimed at both boys and girls (collectively, the "SLF Collections"). *See* ¶ 15, *infra*.

3.      Skechers not only failed to properly manufacture the Defective Sneakers, but once it was aware of the dangers inherent in the products, it then failed to disclose the safety hazards to consumers.

4.      As early as July 2017, Skechers learned that there were potential defects with its battery-operated light-up sneakers as customers reported various issues in since-removed comments on Skechers' website.  Having taken unnecessary risks in the design and manufacture of the Defective Sneakers, and now having learned of the materialization of those risks to consumers, Skechers chose to discontinue problematic styles and flood the market with newer improved designs, all while quietly replacing sneakers of a handful of consumers who raised the dangers of the Defective Sneakers to the Company.

5.      Despite these steps to keep consumers quiet, the vast majority of the Class continued to suffer harm, having spent money on Defective Sneakers for children who continued to wear the defective light-up sneakers and experienced chemical burns on their lower extremities as a result of the design defect.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d) because this is a class action involving common questions of law or fact in which the aggregate amount in controversy exceeds $5,000,000, there are more than 100 members of the Class, and at least one member of the putative Class is a citizen of a state different from that of the Defendant.  This Court also has supplemental jurisdiction over Plaintiffs' and the Class' state law claims pursuant to 28 U.S.C. § 1367.

7.      This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction.  This Court has personal jurisdiction over Defendant because Defendant

conducts substantial business in this district.

8.      Venue is properly laid in the Southern District of New York pursuant to 28 U.S.C.

§ 1391(b).  At all relevant times, Defendant has conducted and continues to conduct business based

in this district.  Accordingly, Defendant is a corporation that resides in this district pursuant to 28

U.S.C. § 1391(d).

**PARTIES**

9.      At all relevant times, Plaintiff Sherry Foster is and was a resident of Hillsdale, New

York.  Plaintiff purchased the Defective Sneakers in or around March 2018.

10.     Defendant Skechers U.S.A., Inc. is a corporation organized and existing under the

laws of the state of Delaware in 1998 with its principle place of business at 228 Manhattan Beach

Blvd., Manhattan Beach, CA 90266.  At all times relevant hereto, Skechers U.S.A., Inc. regularly

conducted and sustained business in New York by labeling, marketing, distributing, promoting and

selling its products in New York.

**SUBSTANTIVE ALLEGATIONS**

**A.      Background**

11.     Skechers is a global footwear and apparel brand that designs, manufactures, markets,

distributes and sells more than 3,000 lifestyle and athletic footwear styles for men, women, and

children.

12.     Currently, Skechers products can be purchased in over 160 countries through more

than 2,000 Skechers retail stores and global e-commerce platforms, including www.skechers.com.

Skechers also markets its products to wholesale partners.

13.     Since its emergence as a major footwear brand in or around 1999, Skechers has

earned substantial profits.  For example, in 2016, Skechers recorded net sales of $3.56 billion, up

almost $500 million from the previous year.  For 2016, net earnings attributable to Skechers U.S.A.

3

was over $243 million.

14.     Through these outlets, Skechers sells its designated line of children's footwear branded as "Skechers Kids."  Skechers Kids includes several types of light-up sneakers for both boys and girls.

15.     During the relevant time period, Skechers marketed and promoted at least 42 styles of lighted footwear for boys in their "S-Lights" collection.  Similarly, during that period, Skechers marketed and promoted at least 101 styles of lighted footwear for girls in three different collections ("S-Lights", "Shopkins", and "Twinkle Toes").  Collectively, these lines comprise and are hereinafter referred to as the "SLF Collections."  The SLF Collections are also referred to above and herein as the Defective Sneakers.

16.     Each style in the SLF Collections bears an individualized style number corresponding to the line and color of the shoe. Each pair of sneakers in the SLF Collections retails between approximately $39.00 to $77.00 dollars.

17.     All styles sold in the SLF Collections include a battery-operated lighting function.

18.     Protective devices are built into batteries, and if damaged, excessive current flow may cause the battery to stop working or the leakage of battery fluid, heat generation, bursting and, in some cases, fire.

19.     Select styles in the SLF Collections used Ni-Cad batteries.  Ni-Cad batteries are extremely toxic, rechargeable batteries commonly used in small battery-operated devices.  Ni-Cad batteries are typically lighter and more compact than lead-acid batteries.

20.     Skechers did not market these styles as being rechargeable and did not intend replacement after battery expiration.

21.     The Ni-Cad battery in the SLF Collection sneakers was sealed in the heel or midsole

of the shoes.

22.     As a general matter, inclusion of a Ni-Cad battery in a product should be done so as to avoid placement of the battery in any air-tight spaces.  It is widely known that encapsulation of Ni-Cad batteries prevents cell venting and is likely to cause high pressure ruptures of the batteries – resulting in damage to the product and injury to the user.

23.     In the event that the gas release vent of a Ni-Cad battery is covered or otherwise obstructed, the vent will not function properly, causing leakage of battery fluid, heat generation, bursting and, in some cases, fire.

24.     Moreover, if water comes in contact with a Ni-Cad battery, the result can be rust and heat generation.  If a battery becomes rusted, the gas release vent may no longer operate and can result in bursting.

25.     In the event this occurs while a consumer is wearing the product, they will suffer injury, including burns due to the excessive heat.

26.     Human skin resistance to burning is affected by various factors, including humidity; thus, burns happen more readily when the skin is soaked with water that contains free ions, such as sweat.

27.     The combination of an encapsulated battery in an environment which commonly contains sweat and moisture from environmental sources – specifically a child's shoe – presents a clear and present danger for the users of such a product.

28.     Defendant disregarded these risks in designing, marketing and selling the SLF Collections or Defective Sneakers to consumers.

29.     Skechers provided no information to consumers about care, maintenance, or water resistance properties of any style in the SLF Collections containing Ni-Cad batteries.

30.     In fact, on its website, Defendant simply states that "machine washing light-up shoes is not advised as it may damage the lights."  The website further suggests that consumers clean the shoe "with mild soap, warm water and a soft cloth."

31.     Skechers' website lacks *any* information about the care, maintenance, and water resistance properties of the lighted Ni-Cad battery operated light up sneakers in the SLF Collections.

## B.     Skechers' Defective Sneakers Burn Plaintiff's Minor Son

32.     On or about March 28, 2018, Sherry Foster purchased several pairs of shoes from Shoe Show in Olean, New York.  Shoe Show is a retail store with 1,118 locations in 46 states across the country that sells various brands of footwear including Skechers.  At the time, Shoe Show sold several styles of sneakers in the SLF Collections.

33.     One of the pairs of shoes purchased by Plaintiff was a pair of Skechers S-Lights that cost approximately $65.00.  The shoes were intended for use by her nine year-old son.

34.     The S-Lights style that Plaintiff purchased was part of the SLF Collections and was sold under style number 90293.

35.     The specific sneaker is a "sporty mesh … slip-on casual light up sneaker with metallic detail."  Skechers boasts that the shoe features a "pod design midsole with bright lights" with an "[o]n/[o]ff switch on side can deactivate lights." Especially enticing for children, and parents of children, the sneakers include seven lights that "chase and then blink with every step!"

36.     Most notably, these specific Defective Sneakers contained a Ni-Cad battery which was represented on Skechers' website as "nothing harmful or reactive."

37.     When purchased, the shoes purchased by Plaintiff were packaged in a Skechers' box.  The box lacked any information about the shoe's water resistance properties or battery care. The Skechers' website did not provide any details with respect to battery care or the water resistance

of the shoe.  Similarly, no warnings or instructions – with respect to use and care of the sneakers –

were printed on the outside of, inside of, or contained on any paper inserted in, the box.

38.     Plaintiff's son regularly wore the Skechers sneakers while he engaged in the normal

activities of a healthy, nine-year old boy.

39.     In or around late June 2018, after approximately three months of use, Plaintiff's son

wore the Defective Sneakers to a celebration on his last day of school.

40.     Prior to that day, Plaintiff did not experience problems with the S-Lights sneakers.

41.     Upon returning home from school, Plaintiff's son complained of pain in his feet.

Plaintiff soon discovered that her son's feet were red and burned.

42.     Plaintiff inspected her son's Skechers sneakers and noted that the light-up feature

was no longer working.

43.     After being examined by the podiatrist the next day, Plaintiff's son was diagnosed

with second degree burns on his feet that the doctor stated were "chemical" in nature.

44.     Upon information and belief, other consumers wore various styles from the SLF

Collections – like Twinkle Toe sneakers – experienced varying degrees of burns which healed when

consumers stopped wearing their Skechers' shoes.

45.     Upon information and belief, numerous other children experienced burns (of varying

degrees) from wearing styles in the SLF Collections.

46.     Plaintiff alerted Skechers about her son's injuries from wearing the S-Lights

sneakers.

47.     Skechers responded by offering Plaintiff a free replacement pair of the sneakers,

which Plaintiff declined.

48.     In early July 2018, as a result of bad publicity the Company was receiving due to

Plaintiff's outspoken internet presence about her experience, a spokesman for Skechers issued a statement which read, "Skechers footwear products are rigorously tested for safety. Skechers, a family brand, has sold tens of millions of pairs of children's lighted footwear worldwide and has not had one incident of chemical burns reported."

**C.**    **Skechers Quietly Replaced Defective Sneakers Beginning As Early As 2017**

49.    As early as July 2017, Skechers was aware of design defects in the SLF Collections and implemented a routine practice of contacting consumers who reported problems with styles in the SLF Collections and offering and providing replacement shoes.

50.    The issues reported permeated all styles of sneakers containing encapsulated Ni-Cad batteries sold by Skechers in the SLF Collections.

51.    While Skechers had quietly discontinued the specific S-Lights Flashpod Scoria style in 2017, the shoe was still available for purchase by third party sellers, like Shoe Show. These third-party retailers continued to advertise that style of Defective Sneakers to the public.

52.    Skechers' website now posts a warning to consumers of the risks associated with newer styles in the SLF Collections.

53.    Specifically, Skechers' website now directs consumers to reference instruction manuals that the Company states accompany Skechers light-up sneakers at the time of purchase. Indeed, the website also now provides instructions about proper battery care in newer styles so that users "get the most out of" their shoes and also avoid the risk of damaging the batteries inside the shoes.

54.    These warnings and instruction manuals were not provided or available to consumers until just recently.

55.    Skechers has not publicly advised consumers that there are defects within the

Defective Sneakers and consumers continue to purchase and wear the shoes from the SLF Collections.

56.     Notably, since Plaintiff has gone public with her experience with the Defective Sneakers, Skechers and some third party retailers have since removed from their websites information about the many styles of the Defective Sneakers.

## CLASS ACTION ALLEGATIONS

57.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rule of Civil Procedure, individually and on behalf of a class consisting of:

> All persons who purchased Skechers lighted footwear with an encapsulated Ni-Cad battery, throughout the United States during the period between November 7, 2015 and the date of final judgment in this matter (the "Class Period").

58.     Excluded from the Class is Defendant, its officers and directors at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, any entity in which the Defendant has or had a controlling interest; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

59.     The members of the Class are so numerous that joinder of all members is impracticable.  The exact number of Class members is unknown to Plaintiff at this time, however it can be ascertained through appropriate discovery.  Class members may be identified from records maintained by Defendant.

60.     Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members.  The questions of law and fact common to the Class include but are not limited to:

> a.     whether Defendant violated 15 U.S.C. § 2301, *et. seq.*;

b.      whether Defendant's product was defective in the design or formulation in that when it left the hands of the Defendant, the foreseeable risks of the product exceeded the benefits associated with its design or formulation, or it was more dangerous than an ordinary consumer would expect;

c.      whether Defendant's product was defective due to the inadequate warning or instruction because Defendant knew or should have known that the product created significant risks of serious bodily harm to consumers and they failed to adequately warn consumers of such risks;

d.      whether Defendant violated the New York Commercial Code § 2-313;

e.      whether Defendant violated the New York Commercial Code § 2-314;

f.      whether Defendant violated New York Commercial Code § 2-315;

g.      whether the Defendant failed to exercise reasonable care in the design, manufacture, testing, marketing and distribution into the stream of commerce of its product including failing to meet its duty of insuring that the product did not pose a significant increase risk of injury; and

h.      whether Defendant has been unjustly enriched at the expense of Plaintiffs by accepting and retaining profits and benefits from the purchase of its defective products.

61.     Plaintiff's claims are typical of the claims of the Class members and arise from the same course of conduct by Skechers.  The relief Plaintiff seeks is typical of the relief sought for the absent Class members.

62.     Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff understands that as class representative, Plaintiff assumes a fiduciary responsibility to the Class to represent its interests fairly and adequately.  Plaintiff recognized that

as class representative, Plaintiff must represent and consider the interests of the class just Plaintiff would represent and consider his own interests.  Plaintiff understands that in decisions regarding the conduct of the litigation and its possible settlement, Plaintiff must not favor his own interests over those of the Class.  Plaintiff understands that in order to provide adequate representation, Plaintiff must be informed of developments in litigation, cooperate with class counsel, and testify at deposition and/or trial.

63.     Plaintiff has engaged the services of the undersigned counsel. Counsel is experienced in complex class action litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiff and absent Class members.

64.     The questions of law and fact common to the Class, as summarized above, predominate over any questions affecting only individual members, in satisfaction of Rule 23(b)(2), and each such common question warrants class certification under Rule 23(c)(4).

65.     In recognition of the services the Plaintiff has rendered and will continue to render to the Class, the Plaintiff will request payment of service awards upon resolution of this action.

66.     Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.  Compared to individualized actions, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

67.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation.  The Class members have been damaged and are entitled to recover as a result of Defendant's violations of state and common law.  Although the relative damages suffered by individual Class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  Plaintiff lacks the financial

resources to conduct a thorough examination of Defendant's records and to prosecute vigorously a lawsuit against Defendant to recover such damages. In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's practices.

68.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) and/or 23(b)(3).

### CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT 15 U.S.C. § 2301, et seq.

69.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in all preceding paragraphs with the same force and effect as if more fully set forth herein.

70.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332.

71.     The SLF Collections are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

72.     Plaintiff and the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranties.

73.     Skechers is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

74.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

75.     Skechers provided Plaintiff and the other Class members with an implied warranty of merchantability in connection with the purchase of their footwear that is an "implied warranty"

within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C.§ 2301(7).  As a part of the implied warranty of merchantability, Skechers warranted that the defective SLF Collections were fit for their ordinary purpose as sneakers, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

76.     Skechers breached its implied warranties, as described in more detail above, and is therefore liable to Plaintiff and the Class pursuant to 15 U.S.C. § 2310(d)(1).  Without limitation, the Skechers lighted footwear collection share common design defects in that the batteries contained inside the sneakers have caused burns to users.  Skechers has admitted that the SLF Collections are defective in quietly replacing sneakers to those consumers who reported an issue, but Defendant's attempt at redress is woefully insufficient to address the defects of its product.

77.     In its capacity as a warrantor, Skechers had knowledge of the inherent defects in the SLF Collections.  Any effort by Skechers to limit the implied warranties in a manner that would limit liability for the defective SLF Collections is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the SLF Collections is null and void.

78.     Any limitations Skechers might seek to impose on its warranties are substantively unconscionable.  Skechers knew that the SLF Collections were defective and would continue to pose safety risks.  Skechers failed to disclose these defects to Plaintiff and the other Class members.  Thus, Skechers' enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

79.     Pursuant to 15 U.S.C. § 2310(e), Plaintiff is entitled to bring this class action and is not required to give Skechers notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.

80.     The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.  Plaintiff, individually and on behalf of the other Class members, seeks all damages permitted by law, in an amount to be proven at trial.  In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiff and the other Class members in connection with the commencement and prosecution of this action.

## COUNT II
## STRICT PRODUCTS LIABILITY DESIGN DEFECT

81.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in all preceding paragraphs with the same force and effect as if more fully set forth herein.

82.     Defendant is the manufacturers, designers, distributors, sellers, and/or suppliers of children's footwear, including the SLF Collections.

83.     The SLF Collections manufactured and supplied by Defendant were defective in design or formulation in that, when it left the hands of the Defendant, the foreseeable risks of the product exceeded the benefits associated with its design or formulation, or it was more dangerous than an ordinary consumer would expect.

84.     The Defective Sneakers from SLF Collections, used by Plaintiff and the Class, were not materially altered or modified prior to their use.

85.     The foreseeable risks associated with the design or formulation of the SLF Collections, include, but are not limited to, the fact that the design or formulation of the SLF Collections is more dangerous than a reasonably prudent consumer would expect when used in an

intended or reasonably foreseeable manner.

86.     As a direct and proximate result of Plaintiff's and the Class' use of the Defective Sneakers from the SLF Collections as manufactured, designed, sold, supplied, marketed and introduced into the stream of commerce by Defendant, Plaintiff and the Class suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

87.     As a direct and proximate result of the foregoing, Plaintiff and the Class are entitled to damages.

## COUNT III
## FAILURE TO WARN

88.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in all preceding paragraphs with the same force and effect as if more fully set forth herein.

89.     The SLF Collections manufactured and supplied by Defendant was defective due to inadequate warning or instruction because Defendant knew or should have known that the product created significant risks of serious bodily harm to consumers and they failed to adequately warn consumers of such risks as follows:

    a.   The Defendant knew or, in the exercise of reasonable care, should have known that footwear marketed to be worn on a daily basis, subject to varying weather conditions and normal wear and tear, that includes batteries, like the SLF Collections presents the danger that the Ni-Cad batteries could become damaged and leak and cause injury.

    b.   The Defendant failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided concerning the risk of injuries if the

Ni-Cad batteries inside the SLF Collections became damaged and leaked and caused injury.

90.    The Defendant, as manufacturer of the SLF Collections, are held to the level of knowledge of an expert in the field of that type of shoe, and had a duty to warn consumers of the dangers associated with the shoes and failed to do so.

91.    The SLF Collections manufactured and supplied by Defendant were defective due to inadequate post-marketing warning or instruction because, after Defendant knew or should have known of the risk of serious bodily harm, as set forth herein, from the use of the SLF Collections, Defendant failed to provide an adequate warning to consumers and/or their health care providers of the product, knowing the product could cause serious injury as set forth herein.

92.    As a direct and proximate result of Plaintiff's and the Class' use of the SLF Collections as manufactured, designed, sold, supplied, marketed and introduced into the stream of commerce by Defendant, Plaintiff and the Class suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

93.    As a direct and proximate result of the foregoing, Plaintiff and the Class are entitled to damages.

**COUNT IV**
**BREACH OF EXPRESS WARRANTY BY DESCRIPTION (N.Y. U.C.C. § 2-313)**

94.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in all preceding paragraphs with the same force and effect as if more fully set forth herein.

95.    Defendant expressly warranted by its description that the SLF Collections were safe for children to wear.

96.    The SLF Collections manufactured and sold by Defendant did not conform to these express representations because it caused serious injury to Plaintiff and the Class when used as

recommended and directed.

97.     As a direct and proximate result of Defendant's breach of warranty, Plaintiff and the Class have suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

<u>**COUNT V**</u>
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (N.Y. U.C.C. § 2-314)**

98.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in all preceding paragraphs with the same force and effect as if more fully set forth herein.

99.     Skechers was a merchant with respect to the SLF Collections within the meaning of N.Y. U.C.C. § 2-104(1).

100.     A warranty that the SLF Collections were in merchantable condition was implied by law in the transactions when Plaintiffs purchased their shoes under N.Y. U.C.C. § 2-314.

101.     These shoes, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which shoes are used. Specifically, the SLF Collections are inherently defective in that the footwear is marketed to be worn on a daily basis and subject to varying weather conditions and normal wear and tear; however, the SLF Collections present the danger that the Ni-Cad batteries could become damaged and leak and cause injury.

102.     Skechers was provided notice of these issues by consumers and quietly sent those consumers replacement sneakers, then discontinued problematic styles and then flooded the market with newer styles.

103.     As a direct and proximate result of Skechers breach of the warranties of merchantability, Plaintiff and the Class have been damaged in an amount to be proven at trial.

<u>**COUNT VI**</u>
**BREACH OF IMPLIED WARRANTY FITNESS FOR PARTICULAR PURPOSE (N.Y. U.C.C. § 2-315)**

104.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in all preceding paragraphs with the same force and effect as if more fully set forth herein.

105.    At the time Defendant designed, manufactured, marketed, sold, and distributed the SLF Collections for use by Plaintiff and the Class, Defendant knew of the use the SLF Collections were intended and impliedly warranted the product to be of merchantable quality and safe for such use and that its design, manufacture, labeling and marketing were sufficient.

106.    Plaintiff and the Class reasonably relied upon the skill and judgment of Defendant as to whether the SLF Collections were of merchantable quality and safe for its intended use and upon Defendant's implied warranty as to such matters.

107.    Contrary to such implied warranty, the SLF Collections were not of merchantable quality or safe for its intended use, because the product was unreasonably dangerous and defective as described above.

108.    As a direct and proximate result of Defendant's breach of warranty, Plaintiff and the Class has suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

109.    As a direct and proximate result of Skechers breach of the warranties of merchantability, Plaintiff and the Class have been damaged in an amount to be proven at trial.

**<u>COUNT VII</u>**
**NEGLIGENCE**

110.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in all preceding paragraphs with the same force and effect as if more fully set forth herein.

111.    Defendant had a duty to exercise reasonable care in the design, manufacture, testing, marketing and distribution into the stream of commerce of the SLF Collections including a duty to

insure that the SLF Collections did not pose a significantly increased risk of injury.

112.    Defendant failed to exercise reasonable care in the design, manufacture, testing, marketing and distribution into the stream of commerce of the SLF Collections.  The Defendant knew or, in the exercise of reasonable care, should have known that footwear that marketed to be worn on a daily basis in all types of weather conditions and that contain batteries, like the SLF Collections, could present a danger if the batteries became damaged and leaked and cause injuries, and therefore was not safe for use by Plaintiff and the Class.

113.    Despite the fact that Defendant knew or should have known that the SLF Collections could fail therefore giving rise to pain and suffering, debilitation and the need for medical treatment and further complications, Defendant continued to market the SLF Collections as safe shoes for children.

114.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered significant damages, including but not limited to physical injury, pain and suffering and further treatment and will continue to suffer such damages in the future. In taking the actions and omissions that caused these damages, Defendant were guilty of malice, oppression and fraud, and Plaintiff is therefore entitled to recover punitive damages.

## COUNT VIII
## UNJUST ENRICHMENT

115.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in all preceding paragraphs with the same force and effect as if more fully set forth herein.

116.    Pursuant to the doctrine of unjust enrichment, a defendant has something of value at the plaintiff's expense and under circumstances that impose a legal duty of restitution.  Under the equitable doctrine, a person who has been unjustly enriched at the expense of another is required to make restitution to the other.

117.    As the intended and expected result of their conscious wrongdoing, Defendant has profited and benefited from the purchase and use of the SLF Collections by Plaintiff and the Class.

118.    Defendant has voluntarily accepted and retained those profits and benefits, derived from Plaintiff and the Class, with full knowledge and awareness that, as a result of Defendant's misrepresentations and other conscious and intentional wrongdoing, Plaintiff and the Class were not receiving a product of the quality, nature, or fitness that had been represented by Defendant, or that Plaintiff and the Class, who as reasonable consumers were expected to receive.

119.    By virtue of the conscious wrongdoing alleged above, Defendant has been unjustly enriched at the expense of Plaintiff and the Class, who are entitled in equity, and hereby seek, the disgorgement and restitution of Defendant's wrongful profits, revenues and benefits, to the extent and in the amount deemed appropriate by the Court; and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

## COUNT IX
## NEGLIGENT MISREPRESENTATION

120.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in all preceding paragraphs with the same force and effect as if more fully set forth herein.

121.    At common law, the elements of negligent misrepresentation are: (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false misrepresentation that it should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his detriment.   This differs from a fraudulent misrepresentation because the party making the misrepresentation need not be aware that the representation is false and need not intend the other party to act on it.

122.    Plaintiff and the Class engaged in business transactions with Defendant for the purchase of goods from Skechers stores and other third party retailers selling the SLF Collections. These purchases were made and induced based on Defendant's misrepresentations as set forth herein.

123.    Plaintiff and the Class reasonably relied on said misrepresentations when making their purchases.  As a result, Plaintiff and the Class suffered monetary damages.

### **PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court enter a judgment against SKECHERS U.S.A, INC. and in favor of Plaintiff and the Class, and grant the following relief:

(a)    Determine that this action be maintained as a class action and certify it as such under Rule 23(b)(2) and/or 23(b)(3), or alternatively certify all issues and claims that are appropriately certified and designate and appoint Plaintiff as Class Representative and Plaintiff's chosen counsel as Class Counsel;

(b)    Award Plaintiff and Class members actual, compensatory damages or, in the alternative, statutory damages as proven at trial;

(c)    Award Plaintiff and Class members exemplary damages in such amount as proven at trial;

(d)    Award Plaintiff and Class members their reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest;

(e)    Award Plaintiff and Class members restitution and/or disgorgement of SKECHERS U.S.A, INC.'s  ill-gotten gains relating to the conduct described in this Complaint; and

(f)      Award Plaintiffs and Class members such other and further and different relief as

the case may require or as determined to be just, equitable, and proper by this Court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.


Dated: November 7, 2018

                                          Respectfully submitted,

                                          **HACH ROSE SCHIRRIPA & CHEVERIE LLP**

                                          By:*/s/ Daniel B. Rehns*
                                          Frank R. Schirripa
                                          Daniel B. Rehns
                                          Hillary M. Nappi
                                          112 Madison Avenue, 10th Floor
                                          New York, New York 10016
                                          Telephone: (212) 213-8311
                                          Facsimile: (212) 779-0028
                                          Email: *fschirripa@hrsclaw.com*
                                                 *drehns@hrsclaw.com*
                                                 *hnappi@hrsclaw.com*



                                          By:*/s/ Conrad J. Benedetto*
                                          Conrad J. Benedetto, Esq.
                                          (*pro hac vice* forthcoming)
                                          THE LAW OFFICE OF CONRAD J. BENEDETTO
                                          1233 Haddonfield Berlin Road, Suite 1
                                          Voorhees, New Jersey 08043
                                          Tel.: (215) 389-1900
                                          *cjbenedetto@benedettolaw.com*

                                          *Attorneys for Plaintiff and the Proposed Class*